**FILED**

AUG 3 1 2022

**U.S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| TRASHUNDA M. HARRISON, | ) |
| a/k/a "Trashunda M. White," | ) |
| | ) |
| Defendant. | ) |

## 4:22CR478 AGF/DDN

### INDICTMENT

The Grand Jury charges that:

### INTRODUCTION

At all times material to this Indictment, unless otherwise specified below:

#### Businesses of Defendant

1.     Defendant TRASHUNDA M. HARRISON ("HARRISON"), also known as "Trashunda M. White," was a resident of St. Louis, Missouri, within the Eastern District of Missouri.

2.     The Quiet Space LLC was a corporation registered with the Missouri Secretary of State.  According to documents filed with the Missouri Secretary of State, HARRISON was the registered agent for The Quiet Space LLC.

3.     Blow, LLC was a corporation registered with the Missouri Secretary of State. According to documents filed with the Missouri Secretary of State, HARRISON and Individual E.H. were registered agents for Blow, LLC.

4.     StrutN 80s LLC was a corporation registered with the Missouri Secretary of State.

1

According to documents filed with the Missouri Secretary of State, HARRISON was the registered agent for StrutN 80s LLC.

## The Paycheck Protection Program

5.      The United States Small Business Administration ("SBA") is an executive-branch agency of the United States government that provides support to entrepreneurs and small businesses. The mission of the SBA is to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in economic recovery after disasters.

6.      The Coronavirus Aid, Relief, and Economic Security ("CARES") Act, Pub. L. No. 116-136, 134 Stat. 281 (2020), is a federal law that was enacted in or around March 2020 to provide emergency financial assistance to the millions of Americans suffering the economic impact caused by the COVID-19 pandemic. One source of relief provided for in the CARES Act is the authorization of forgivable loans to small businesses for job retention and certain other expenses, through the Paycheck Protection Program ("PPP"). The purpose of loans issued under the PPP was to enable small businesses suffering from the economic downturn to continue to pay salary or wages to their employees.

7.      The types of small businesses eligible for a PPP loan included individuals who were self-employed or operated as a sole proprietorship, and who did not have any employees.  Such individuals were eligible to receive a maximum PPP loan of up to $20,833 to cover lost compensation or income from the sole proprietorship. To obtain a PPP loan, a qualifying individual was required to submit and sign a PPP loan application. The PPP loan application required the individual to acknowledge the program rules and make certain affirmative certifications to obtain the PPP loan.  In the PPP loan application, the individual was required to certify, among other

things, (a) that the small business was in operation on February 15, 2020; and (b) the annual income and expenditures for the sole proprietorship, as typically reported to the Internal Revenue Service on Form 1040, Schedule C, for a given tax year.  These certifications were used to calculate the amount of money the qualifying individual was eligible to receive under the PPP.  In addition, the individual applying for a PPP loan was required to submit documentation supporting the sole proprietorship's annual income.

8.      A PPP loan application was then processed by a participating lender. If a PPP loan application was approved, the participating lender funded the loan using its own monies, which were then guaranteed by the SBA.  Generally, in the event that the borrower defaulted on a PPP loan, the SBA would purchase the borrower's debt from the lending financial institution and take on the responsibility for paying back the loan.

9.      PPP loan funds were required to be used on certain permissible expenses, including payroll costs, mortgage interest, rent, and utilities for the business. In the PPP loan application, the borrower was required to certify that "[a]ll SBA loan proceeds will be used only for business-related purposes as specified in the loan application and consistent with the Paycheck Protection Program Rules."  In that same application, the borrower also was required to certify that "[t]he funds will be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments, as specified under the Paycheck Protection Program Rule."

10.     Under the applicable PPP rules and guidance, recipients of PPP loans could apply to have the interest and principal on the PPP loan fully forgiven, meaning the borrower would owe nothing and would have no obligation to repay the PPP loan.  To obtain full forgiveness of the PPP loan, borrowers had to certify that the loan proceeds had been spent on payroll costs and other permitted expenses.

11.     Borrowers who qualified for and received a "First Draw" PPP loan were permitted to apply for a "Second Draw" PPP loan.  To be eligible for a Second Draw PPP loan, borrowers were required to certify that they had used the First Draw PPP loan only for permitted expenses. Borrowers also were required to demonstrate at least a 25% reduction in gross receipts between comparable quarters in 2019 and 2020.   Like the First Draw PPP loans, Second Draw PPP loans could only be used for certain permitted expenses.  Specifically, borrowers were required to certify that "[t]he funds will be used to retain workers and maintain payroll; or make payments for mortgage interest, rent, utilities, covered operations expenditures, covered property damage costs, covered supplier costs, and covered worker protection expenditures as specified under the Paycheck Protection Program Rules."

12.     Celtic Bank was a participating lender and issued PPP loans guaranteed by the SBA.  Celtic Bank was a financial institution within the meaning of Title 18, United States Code, Sections 20 and 1344, the deposits of which are insured by the Federal Deposit Insurance Corporation.

13.     Kabbage Inc. was a participating lender and issued PPP loans guaranteed by the SBA. Kabbage Inc. processed applications for PPP loans submitted through an Internet-based web portal and was headquartered in Georgia.

14.     Funding Circle was a participating lender and issued PPP loans guaranteed by the SBA.  Funding Circle processed applications for PPP loans submitted through an Internet-based web portal that was hosted on a server located in Virginia.

15.     MBE Capital Partners was a participating lender and issued PPP loans guaranteed by the SBA.  MBE Capital Partners process applications for PPP loans submitted through an Internet-based web portal that was hosted on a server located in New Jersey.

4

**Defendant's PPP Loan Applications**

16.     Between in or around June 2020 and in or around April 2021, HARRISON submitted and caused to be submitted multiple PPP loan applications on behalf of The Quiet Space LLC, Blow LLC, and StrutN 80s LLC, and in her name individually as a sole proprietor.

17.     The PPP loan applications submitted and caused to be submitted by HARRISON contained various material misrepresentations, including false representations about the average monthly payroll or annual income of the business or applicant.

18.     HARRISON also submitted and caused to be submitted with these PPP loan applications fraudulent tax forms, purporting to support the false representations about average monthly payroll or annual income in the application.

19.     Based on these PPP loan applications, approximately $204,095 in PPP loan funds in total were disbursed into bank accounts in the name of HARRISON, and HARRISON spent the loan proceeds on expenses not authorized under PPP rules.

## COUNTS I – II
### Bank Fraud (18 U.S.C. § 1344)

### The Scheme

20.     Paragraphs 1 through 19 are realleged and incorporated by reference as if fully set forth herein.

21.     Beginning no later than in or around June 2020, and continuing until through at least in or around April 2021, in the Eastern District of Missouri and elsewhere, the defendant,

**TRASHUNDA M. HARRISON**,

with the intent to defraud, devised and intended to devise a scheme and artifice to defraud Celtic Bank, a financial institution, and to obtain moneys, funds, credits, assets, securities, and other property owned by and under the custody and control of Celtic Bank, by means of materially false

5

and fraudulent pretenses, representations, and promises.

## Manner and Means

### *The Quiet Space LLC – First Draw PPP Loan*

22.     It was part of the scheme that, on or about June 2, 2020, HARRISON submitted and caused to be submitted a fraudulent First Draw PPP loan application as a sole proprietorship on behalf of The Quiet Space LLC to Celtic Bank, with the intent to obtain loan proceeds from Celtic Bank.

23.     It was further part of the scheme that HARRISON falsely represented on the First Draw PPP loan application that the average monthly payroll for The Quiet Space LLC was $8,333, when, in truth and fact, The Quiet Space LLC had substantially lower, if any, payroll expenses.

24.     It was further part of the scheme that HARRISON falsely claimed on the First Draw PPP loan application that she, as owner of The Quiet Space LLC, was not "an owner of any other business, or have common management with, any other business," when in truth and fact, HARRISON owned other businesses, including Blow, LLC and Strutn 80s LLC, for which she also submitted PPP loan applications.

25.     It was further part of the scheme that HARRISON falsely claimed that "[t]he funds will be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments," when in truth and fact, HARRISON did not intend to spend the loan funds on authorized expenses.

26.     It was further part of the scheme that HARRISON submitted and caused to be submitted with the First Draw PPP loan application for The Quiet Space LLC a fraudulent IRS Form 1040, Schedule C (Profit or Loss from Business), purporting to have been filed by HARRISON as a sole proprietor and reporting $101,304 in net profit in 2019.  In truth and fact,

the IRS Form 1040, Schedule C was falsified, and HARRISON did not earn that amount of money in 2019.

27.     It was further part of the scheme that as a result of HARRISON's false and fraudulent representations in the First Draw PPP application she had submitted to Celtic Bank, Celtic Bank approved The Quiet Space LLC's PPP loan application.

28.     It was further part of the scheme that HARRISON caused Celtic Bank to disburse, on or about June 4, 2020, approximately $20,832 in a Wells Fargo Bank account #xxxxxx3259 in the name of HARRISON.

29.     It was further part of the scheme that HARRISON spent the First Draw PPP loan proceeds on unauthorized expenses, including personal shopping, cash withdrawals, and payments to individuals with no affiliation with The Quiet Space LLC.

30.     It was further part of the scheme that HARRISON, on or about October 31, 2020, submitted and caused to be submitted a fraudulent application for PPP loan forgiveness on behalf of The Quiet Space LLC.

31.     It was further part of the scheme that HARRISON falsely represented on the PPP loan forgiveness application that she had spent $14,239.50 of the First Draw PPP loan for The Quiet Space LLC on payroll costs.

### The Quiet Space LLC – Second Draw PPP Loan

32.     It was part of the scheme that, on or about January 23, 2021, HARRISON submitted and caused to be submitted a fraudulent Second Draw PPP loan application in her name as a sole proprietorship, on behalf of The Quiet Space LLC, to Celtic Bank, with the intent to obtain loan proceeds from Celtic Bank.

33.     It was further part of the scheme that HARRISON falsely represented on the Second

Draw PPP loan application that the average monthly payroll for the sole proprietorship was $8,333.

34.    It was further part of the scheme that HARRISON falsely claimed on the Second Draw PPP loan application that she, as the applicant, was not "an owner of any other business, or have common management (including a management agreement) with any other business."

35.    It was further part of the scheme that HARRISON falsely claimed that she had "used the full loan amount (including any increase) of the First Draw Paycheck Protection Program Loan only for eligible expenses."

36.    It was further part of the scheme that HARRISON falsely claimed that "[t]he funds will be used to retain workers and maintain payroll; or make payments for mortgage interest, rent, utilities, covered operations expenditures, covered property damage costs, covered supplier costs, and covered worker protection expenditures," when in truth and fact, HARRISON did not intend to spend the loan funds on authorized expenses.

37.    It was further part of the scheme that as a result of HARRISON's false and fraudulent representations in the Second Draw PPP application she had submitted to Celtic Bank, Celtic Bank approved her Second Draw PPP loan application.

38.    It was further part of the scheme that HARRISON caused Celtic Bank to disburse, on or about January 26, 2021, approximately $20,832 in a Wells Fargo Bank account #xxxxxx3259 in the name of HARRISON.

39.    It was further part of the scheme that HARRISON spent the Second Draw PPP loan proceeds on unauthorized expenses, including personal shopping, personal rent payments, and payments to individuals with no affiliation with The Quiet Space LLC.

## Executions of the Scheme

40.     On or about the dates set forth below, in the Eastern District of Missouri, and

elsewhere, the defendant

## TRASHUNDA M. HARRISON,

executed and attempted to execute the scheme and artifice described above, to defraud Celtic Bank,

a financial institution as defined in Title 18, United States Code, Section 20, and to obtain moneys,

funds, credits, assets, securities, and other property owned by and under the custody and control

of Celtic Bank, by means of materially false and fraudulent pretenses, representations, and

promises, in that HARRISON submitted and caused to be submitted a fraudulent PPP loan

application to Celtic Bank, as described below for each count, each submission constituting a

separate count:

| Count | Approx. Date | Summary |
|-------|--------------|---------|
| I | June 2, 2020 | HARRISON submitted and caused to be submitted a fraudulent PPP loan application for approximately $20,832 on behalf of The Quiet Space LLC to Celtic Bank. |
| II | January 23, 2021 | HARRISON submitted and caused to be submitted a fraudulent PPP loan application for approximately $20,832 on behalf of The Quiet Space LLC to Celtic Bank. |

In violation of Title 18, United States Code, section 1344.

## COUNTS III – IX
### Wire Fraud (18 U.S.C. § 1343)

## The Scheme to Defraud

41.     Paragraphs 1 through 19 are realleged and incorporated by reference as if fully set

forth herein.

42.     Beginning no later than in or around June 2020, and continuing until through at

least in or around April 2021, in the Eastern District of Missouri and elsewhere, the defendant,

**TRASHUNDA M. HARRISON**,

with the intent to defraud, devised and intended to devise a scheme and artifice to defraud participating PPP lenders, and to obtain money and property from those lenders, in the form of PPP loans, by means of materially false and fraudulent pretenses, representations, and promises.

**Manner and Means**

*blow llc – First Draw PPP Loan*

43.     It was part of the scheme that, on or about June 22, 2020, HARRISON submitted and caused to be submitted a fraudulent First Draw PPP loan application as a self-employed individual on behalf of "blow llc" to Kabbage Inc., with the intent to obtain loan proceeds from Kabbage Inc.

44.     It was further part of the scheme that HARRISON falsely represented on the First Draw PPP loan application that the average monthly payroll for blow llc was $8,334, when, in truth and fact, blow llc had substantially lower, if any, payroll expenses.

45.     It was further part of the scheme that HARRISON falsely claimed on the First Draw PPP loan application that she, as owner of blow llc, was not "an owner of any other business, or have common management with any other business," when in truth and fact, HARRISON owned other businesses, including The Quiet Space LLC and StrutN 80s LLC, for which she also submitted PPP loan applications.

46.     It was further part of the scheme that HARRISON falsely claimed that "[t]he funds will be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments," when in truth and fact, HARRISON did not intend to spend the loan funds on authorized expenses.

47.     It was further part of the scheme that HARRISON submitted and caused to be submitted with the First Draw PPP loan application for blow llc a fraudulent IRS Form 1040, Schedule C (Profit or Loss from Business), purporting to have been filed by HARRISON as a sole proprietor and reporting $102,212 in net profit in 2019. In truth and fact, the IRS Form 1040, Schedule C was falsified, and HARRISON did not earn that amount of money in 2019.

48.     It was further part of the scheme that as a result of HARRISON's false and fraudulent representations in the First Draw PPP application she had submitted to Kabbage Inc., Kabbage Inc. approved blow llc's PPP loan application.

49.     It was further part of the scheme that HARRISON caused Kabbage Inc. to disburse, on or about June 24, 2020, approximately $20,833 in a Wells Fargo Bank account #xxxxxx3259 in the name of HARRISON.

50.     It was further part of the scheme that HARRISON spent the First Draw PPP loan proceeds on unauthorized expenses, including personal shopping and dining and payments to individuals with no affiliation with blow llc.

51.     It was further part of the scheme that HARRISON, on or about December 2, 2020, submitted and caused to be submitted a fraudulent application for PPP loan forgiveness on behalf of blow llc.

52.     It was further part of the scheme that HARRISON falsely represented on the PPP loan forgiveness application that the First Draw PPP loan "was used to pay costs that are eligible for forgiveness (payroll costs to retain employees, business mortgage interest payments; business rent or lease payments, or business utility payments)."

*StrutN 80s LLC – First Draw PPP Loan*

53.     It was part of the scheme that, on or about July 16, 2020, HARRISON submitted and caused to be submitted a fraudulent First Draw PPP loan application on behalf of StrutN 80s LLC to MBE Capital Partners, with the intent to obtain loan proceeds from MBE Capital Partners.

54.     It was further part of the scheme that HARRISON falsely represented on the First Draw PPP loan application that the average monthly payroll for blow llc was $8,333, when, in truth and fact, StrutN 80s LLC had substantially lower, if any, payroll expenses.

55.     It was further part of the scheme that HARRISON falsely claimed on the First Draw PPP loan application that she, as owner of StrutN 80s LLC, was not "an owner of any other business, or have common management with any other business," when in truth and fact, HARRISON owned other businesses, including The Quiet Space LLC and Blow LLC, for which she also submitted PPP loan applications.

56.     It was further part of the scheme that HARRISON falsely claimed that "[t]he funds will be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments," when in truth and fact, HARRISON did not intend to spend the loan funds on authorized expenses.

57.     It was further part of the scheme that HARRISON submitted and caused to be submitted with the First Draw PPP loan application for StrutN 80s LLC a fraudulent IRS Form 1040, Schedule C (Profit or Loss from Business), purporting to have been filed by HARRISON as a sole proprietor and reporting $100,013 in net profit in 2019.  In truth and fact, the IRS Form 1040, Schedule C was falsified, and HARRISON did not earn that amount of money in 2019.

58.     It was further part of the scheme that as a result of HARRISON's false and fraudulent representations in the First Draw PPP application she had submitted to MBE Capital

12

Partners, MBE Capital Partners approved StrutN 80s LLC's PPP loan application.

59.    It was further part of the scheme that HARRISON caused MBE Capital Partners to disburse, on or about August 14, 2020, approximately $20,800 in a Wells Fargo Bank account #xxxxxx3259 in the name of HARRISON.

60.    It was further part of the scheme that HARRISON spent the First Draw PPP loan proceeds on unauthorized expenses, including personal shopping, personal rent payments, and cash withdrawals.

<em>Blow LLC – First Draw PPP Loan</em>

61.    It was part of the scheme that, on or about July 21, 2020, HARRISON submitted and caused to be submitted a fraudulent First Draw PPP loan application on behalf of "Blow LLC" to Kabbage Inc., with the intent to obtain loan proceeds from Kabbage Inc.

62.    It was further part of the scheme that HARRISON caused this First Draw PPP loan application for Blow LLC to be submitted in the name of Individual E.H., using the social security number of Individual E.H., and bearing a signature purporting to belong to Individual E.H., for the purpose of concealing the fact that HARRISON had already obtained a PPP loan for "blow llc" and to fraudulently obtain a second PPP loan for the same company against PPP rules.

63.    It was further part of the scheme that HARRISON caused this First Draw PPP loan application for Blow LLC to be submitted with a different capitalization of "Blow LLC," for the purpose of concealing the fact that HARRISON had already obtained a PPP loan for "blow llc" and to fraudulently obtain a second PPP loan for the same company against PPP rules.

64.    It was further part of the scheme that HARRISON falsely represented on the First Draw PPP loan application that the average monthly payroll for Blow LLC was $8,334, when, in truth and fact, Blow LLC had substantially lower, if any, payroll expenses.

65.     It was further part of the scheme that HARRISON falsely claimed that "[t]he funds will be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments," when in truth and fact, HARRISON did not intend to spend the loan funds on authorized expenses.

66.     It was further part of the scheme that HARRISON submitted and caused to be submitted with the First Draw PPP loan application for Blow LLC a fraudulent IRS Form 1040, Schedule C (Profit or Loss from Business), purporting to have been filed by Individual E.H. as a sole proprietor and reporting $104,927 in net profit in 2019.  In truth and fact, the IRS Form 1040, Schedule C was falsified, and Individual E.H. did not file this form with the IRS.

67.     It was further part of the scheme that as a result of HARRISON's false and fraudulent representations in the First Draw PPP application she had submitted to Kabbage Inc., Kabbage Inc. approved Blow LLC's PPP loan application.

68.     It was further part of the scheme that HARRISON caused Kabbage Inc. to disburse, on or about July 23, 2020, approximately $20,833 in a Navy Federal Credit Union account #xxxxxx7924 in the name of HARRISON.

69.     It was further part of the scheme that HARRISON spent the First Draw PPP loan proceeds on unauthorized expenses, including personal shopping and dining, personal rent payments, cash withdrawals, and a $5,000 payment to Individual E.H.

70.     It was further part of the scheme that HARRISON, on or about December 2, 2020, submitted and caused to be submitted a fraudulent application for PPP loan forgiveness on behalf of Blow LLC in the name of Individual E.H.

71.     It was further part of the scheme that HARRISON falsely represented on the First Draw PPP loan forgiveness application that the First Draw PPP loan "was used to pay costs that

14

are eligible for forgiveness (payroll costs to retain employees, business mortgage interest payments; business rent or lease payments, or business utility payments)."

*StrutN 80s LLC – Second Draw PPP Loan*

72.      It was part of the scheme that, on or about January 19, 2021, HARRISON submitted and caused to be submitted a fraudulent Second Draw PPP loan application on behalf of StrutN 80s LLC to MBE Capital Partners, with the intent to obtain loan proceeds from MBE Capital Partners.

73.      It was further part of the scheme that HARRISON falsely represented on the Second Draw PPP loan application that the average monthly payroll for StrutN 80s LLC was $8,320.

74.      It was further part of the scheme that HARRISON falsely claimed on the Second Draw PPP loan application that she, as the applicant, was not "an owner of any other business, or have common management (including a management agreement) with any other business."

75.      It was further part of the scheme that HARRISON falsely claimed that she had "used the full loan amount (including any increase) of the First Draw Paycheck Protection Program Loan only for eligible expenses."

76.      It was further part of the scheme that HARRISON falsely claimed that "[t]he funds will be used to retain workers and maintain payroll; or make payments for mortgage interest, rent, utilities, covered operations expenditures, covered property damage costs, covered supplier costs, and covered worker protection expenditures," when in truth and fact, HARRISON did not intend to spend the loan funds on authorized expenses.

77.      It was further part of the scheme that HARRISON caused MBE Capital Partners to disburse, on or about February 17, 2021, approximately $20,800 in a Wells Fargo Bank account #xxxxxx3259 in the name of HARRISON.

15

78.     It was further part of the scheme that HARRISON spent the Second Draw PPP loan proceeds on unauthorized expenses, including personal shopping and dining, personal rent payments, and cash withdrawals.

*blow llc – Second Draw PPP Loan*

79.     It was part of the scheme that, on or about February 5, 2021, HARRISON submitted and caused to be submitted a fraudulent Second Draw PPP loan application as a self-employed individual on behalf of "blow llc" to Customers Bank, with the intent to obtain loan proceeds from Customers Bank.

80.     It was further part of the scheme that HARRISON falsely represented on the Second Draw PPP loan application that the average monthly payroll for blow llc was $11,667.

81.     It was further part of the scheme that HARRISON falsely claimed on the Second Draw PPP loan application that she, as the owner of blow llc, was not "an owner of any other business, or have common management (including a management agreement) with any other business."

82.     It was further part of the scheme that HARRISON falsely claimed that she had "used the full loan amount (including any increase) of the First Draw Paycheck Protection Program Loan only for eligible expenses."

83.     It was further part of the scheme that HARRISON falsely claimed that "[t]he funds will be used to retain workers and maintain payroll; or make payments for mortgage interest, rent, utilities, covered operations expenditures, covered property damage costs, covered supplier costs, and covered worker protection expenditures," when in truth and fact, HARRISON did not intend to spend the loan funds on authorized expenses.

84.     It was further part of the scheme that as a result of HARRISON's false and

16

fraudulent representations in the Second Draw PPP application she had submitted to Customers Bank, Customers Bank approved the Second Draw PPP loan application for blow llc.

85.     It was further part of the scheme that HARRISON caused Customers Bank to disburse, on or about February 11, 2021, approximately $29,166 in a Wells Fargo Bank account #xxxxxx3259 in the name of HARRISON.

86.     It was further part of the scheme that HARRISON spent the Second Draw PPP loan proceeds on unauthorized expenses, including personal shopping and dining, personal rent payments, and payments to individuals with no affiliation with blow llc.

### *Blow LLC – Second Draw PPP Loan*

87.     It was part of the scheme that, on or about February 12, 2021, HARRISON submitted and caused to be submitted a fraudulent Second Draw PPP loan application on behalf of "Blow LLC" to Kabbage Inc., with the intent to obtain loan proceeds from Kabbage Inc.

88.     It was further part of the scheme that HARRISON caused this Second Draw PPP loan application to be submitted in the name of Individual E.H., using the social security number of Individual E.H., and bearing a signature purporting to belong to Individual E.H., for the purpose of concealing the fact that HARRISON had already obtained a Second Draw PPP loan application for "blow llc" and to fraudulently obtain another Second Draw PPP loan for the same company against PPP rules.

89.     It was further part of the scheme that HARRISON caused this Second Draw PPP loan application to be submitted with a different capitalization of "Blow LLC," for the purpose of concealing the fact that HARRISON had already obtained a Second Draw PPP loan application for "blow llc" and to fraudulently obtain another Second Draw PPP loan for the same company against PPP rules.

17

90.     It was further part of the scheme that HARRISON falsely represented on the Second Draw PPP loan application that the average monthly payroll for Blow LLC was $11,667.

91.     It was further part of the scheme that HARRISON falsely claimed that Blow LLC had "used the full loan amount (including any increase) of the First Draw Paycheck Protection Program Loan only for eligible expenses."

92.     It was further part of the scheme that HARRISON falsely claimed that "[t]he funds will be used to retain workers and maintain payroll; or make payments for mortgage interest, rent, utilities, covered operations expenditures, covered property damage costs, covered supplier costs, and covered worker protection expenditures," when in truth and fact, HARRISON did not intend to spend the loan funds on authorized expenses.

93.     It was further part of the scheme that as a result of HARRISON's false and fraudulent representations in the Second Draw PPP application she had submitted to Kabbage Inc., Kabbage Inc.  approved the Second Draw PPP loan application for Blow LLC.

94.     It was further part of the scheme that HARRISON caused Customers Bank to disburse, on or about February 17, 2021, approximately $29,166 in a Navy Federal Credit Union account #xxxxxx7924 in the name of HARRISON.

95.     It was further part of the scheme that HARRISON spent the Second Draw PPP loan proceeds on unauthorized expenses, including personal shopping and dining and cash withdrawals.

*Sole Proprietorship PPP Loan*

96.     It was part of the scheme that, on or about April 29, 2021, HARRISON submitted and caused to be submitted a fraudulent PPP loan application as a sole proprietorship to Funding Circle, with the intent to obtain loan proceeds from Funding Circle.

97.     It was further part of the scheme that HARRISON falsely represented on the PPP

18

loan application that HARRISON's gross income in 2020, as reported on IRS Form 1040, Schedule C, was $110,152, when in truth and fact, HARRISON did not earn that amount of money in 2020.

98.     It was further part of the scheme that HARRISON falsely claimed on the PPP loan application that she, as the applicant, was not "an owner of any other business, or have common management (including a management agreement) with any other business."

99.     It was further part of the scheme that HARRISON falsely claimed that "[t]he funds will be used to retain workers and maintain payroll; or make payments for mortgage interest, rent, utilities, covered operations expenditures, covered property damage costs, covered supplier costs, and covered worker protection expenditures," when in truth and fact, HARRISON did not intend to spend the loan funds on authorized expenses.

100.     It was further part of the scheme that HARRISON submitted and caused to be submitted with the PPP loan application a fraudulent IRS Form 1040, Schedule C (Profit or Loss from Business), purporting to have been filed by HARRISON as a sole proprietor and reporting $110,152 in gross income in 2020.  In truth and fact, the IRS Form 1040, Schedule C was falsified, and HARRISON did not earn that amount of money in 2020.

101.     It was further part of the scheme that as a result of HARRISON's false and fraudulent representations in the PPP application she had submitted to Funding Circle, Funding Circle approved HARRISON's PPP loan application.

102.     It was further part of the scheme that HARRISON caused Funding Circle to disburse, on or about May 12, 2021, approximately $20,833 in a Wells Fargo Bank account #xxxxxx3259 in the name of HARRISON.

103.     It was further part of the scheme that HARRISON spent the PPP loan proceeds on

unauthorized expenses, including dining, personal rent payments, and personal loan payments.

### Wire Communications in Furtherance of the Scheme

104.    On or about the dates set forth below, in the Eastern District of Missouri, and elsewhere, the defendant,

### TRASHUNDA M. HARRISON,

having devised and intended to devise a scheme to defraud and to obtain money by means of materially false and fraudulent pretenses, representations, and promises, for the purpose of executing the scheme described above, caused to be transmitted by means of wire communication in interstate commerce the signals and sounds described below for each count, each transmission constituting a separate count:

| Count | Approx. Date | Summary | Loan Amount |
|---|---|---|---|
| III | June 22, 2020 | A wire communication from HARRISON's residence in the state of Missouri, to Kabbage Inc. servers located outside the state of Missouri, consisting of the PPP loan application submitted on behalf of blow llc to Kabbage Inc. | $20,833 |
| IV | July 16, 2020 | A wire communication from HARRISON's residence in the state of Missouri, to MBE Capital Partners servers located outside the state of Missouri, consisting of the PPP loan application submitted on behalf of StrutN 80s LLC to MBE Capital Partners. | $20,800 |
| V | July 21, 2020 | A wire communication from HARRISON's residence in the state of Missouri, to Kabbage Inc. servers located outside the state of Missouri, consisting of the PPP loan application submitted on behalf of Blow LLC to Kabbage Inc. | $20,833 |

| VI | January 19, 2021 | A wire communication from HARRISON's residence in the state of Missouri, to MBE Capital Partners servers located outside the state of Missouri, consisting of the PPP loan application submitted on behalf of StrutN 80s LLC to MBE Capital Partners. | $20,800 |
|---|---|---|---|
| VII | February 5, 2021 | A wire communication from HARRISON's residence in the state of Missouri, to Kabbage Inc. servers located outside the state of Missouri, consisting of the PPP loan application submitted on behalf of blow llc to Kabbage Inc. | $29,166 |
| VIII | February 12, 2021 | A wire communication from HARRISON's residence in the state of Missouri, to Kabbage Inc. servers located outside the state of Missouri, consisting of the PPP loan application submitted on behalf of Blow LLC to Kabbage Inc. | $29,166 |
| IX | April 29, 2021 | A wire communication from HARRISON's residence in the state of Missouri, to Funding Circle servers located outside the state of Missouri, consisting of the PPP loan application submitted in the name of HARRISON as a sole proprietor to Funding Circle. | $20,833 |

All in violation of Title 18, United States Code, Section 1343.

## FORFEITURE ALLEGATION

The Grand Jury further finds by probable cause that:

1.      Pursuant to Title 18, United States Code, Section 982(a)(2), upon conviction of an offense in violation of Title 18, United States Code, Section 1344, as set forth in Count I – II, the Defendant shall forfeit to the United States of America any property constituting, or derived from, proceeds obtained, directly or indirectly, as a result of such violation.  Subject to forfeiture is a sum of money equal to the total value of property, real or personal, constituting or derived from

any proceeds traceable to such violation, which is at least $41,664.

2.      Pursuant to Title 18, United State Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461, upon conviction of an offense in violation of Title 18, United States Code, Section 1343, as set forth in Counts III – IX, the Defendant shall forfeit to the United States of America any property, real or personal, which constitutes or is derived from proceeds traceable to such violation(s).  Subject to forfeiture is a sum of money equal to the total value of any property, real or personal, constituting or derived from any proceeds traceable to such violation(s), which is at least $162,431.

3.      If any of the property described above, as a result of any act or omission of the Defendants:

a.      cannot be located upon the exercise of due diligence;

b.      has been transferred or sold to, or deposited with, a third party;

c.      has been placed beyond the jurisdiction of the court;

d.      has been substantially diminished in value; or

e.      has been commingled with other property which cannot be divided without difficulty,

the United States of America will be entitled to the forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p).

A TRUE BILL.

_____
FOREPERSON

SAYLER A. FLEMING
United States Attorney

_____
JONATHAN A. CLOW, #68003MO
Assistant United States Attorney

22